DICKEY *v.* JOY.

TRUSTS—REIMBURSEMENT OF TRUSTEE—EXPENSES—ADVANCEMENT.
  The intestate left a small estate and $7,000 in life insur-
  ance which was payable to his widow who became and
  acted as administratrix of the estate. Pursuant to the
  oral request of decedent, his widow put aside $1,000 for
  a home for the son-in-law, which sum she was obliged
  to make up out of the insurance, in order to carry out
  the said desire expressed by the intestate, taking title in
  her name under her agreement in writing to manage the
  property for the benefit of the grandchildren, to whom she
  was to deliver one-fourth of the property each, on their
  attaining their majorities; $200 was advanced by the son-
  in-law. *Held*, that the entire amount so invested was
  impressed with the trust and she was not entitled to be
  reimbursed for the amount of her advancement, but only
  for her proper expenses of administration, though the
  estate never produced any money and said investment ulti-
  mately was derived from her interest in the life insurance.

Appeal from Berrien; Bridgman, J. Submitted
April 19, 1916. (Docket No. 32.) Decided September
26, 1916.

Bill by Jennie W. Dickey and others against Jennie
M. Joy to impress a trust. From a decree for com-
plainants, defendant appeals. Affirmed.

*Coolidge & White*, for complainants.

*James H. Campbell*, for defendant.

The Rev. Henry M. Joy, grandfather of complain-
ants, died intestate on September 30, 1886. He left
surviving him his widow, Jennie M. Joy, their son,
Harry M. Joy, born August 16, 1869, and a daugh-
ter, Etta L., by a former marriage. The latter was
then the wife of Edwin E. Woodford, and lived at

Niles, Mich. Mr. Joy's property consisted of personal effects, household furniture, a library, and some land near Traverse City. This land, as it turned out, was worthless, and nothing was ever realized from it. Mrs. Joy was appointed and acted as administratrix of his estate. Besides the foregoing property, he left life insurance amounting to nearly $7,000, payable to his widow, as beneficiary. On May 11, 1890, the daughter, Etta L. Woodford, died, leaving four children, all girls, the oldest being then about eleven and the youngest about five years of age. These children, all now married, are the complainants in this case. Just before his death Mr. Joy spoke to his wife, the defendant, about some provision to be made for his daughter, Mrs. Woodford. Mrs. Joy testifies in regard to his request as follows:

"And so my husband asked me if I was willing—he knew what money there was, that the life insurance belonged to me—if I was willing to put aside $1,000 to do anything that was necessary for Etta in case she needed it. That was all that was said, not another word. It was his last breath, the request. * * * He made this request that I would not put it into the hands of Mr. Woodford or of his wife on any account."

Down to the time of Mrs. Woodford's death Mrs. Joy had made no attempt to comply with this request of her husband. But she found, when attending Mrs. Woodford's funeral at Niles, that the children were not well located to attend church and school, and offered to put $1,000 into a suitable home for them. A satisfactory house and lot was found, and Mr. Woodford agreed to furnish the additional $200 required to make up the purchase price. The lot was conveyed by the owner to Mr. Woodford on or about June 13, 1890, and by Woodford to the defendant, Mrs. Joy, by a warranty deed bearing date June 21, 1890. With the delivery of this deed to Mrs. Joy, and as part of

the same transaction, an agreement executed by her, and by her son, Henry, and by Woodford, declaring the purposes for which she took and held the lot, was delivered to Woodford as the natural guardian of the children. The description of the lot so purchased, and the facts connected with the purchase, appear in the agreement, which reads as follows:

"Whereas, Henry M. Joy departed this life intestate and left him surviving Jennie M. Joy, his widow, Etta L. Woodford, his daughter by a former wife, and Harry M. Joy, his son by the said Jennie M. Joy, his only heirs at law; and

"Whereas, letters of administration have been duly issued upon said estate to the said Jennie M. Joy; and

"Whereas, the total assets belonging to said estate were of less value than the sum of fifteen hundred dollars and the liabilities against said estate were about five hundred dollars; and

"Whereas, it was the expressed wish of the said Henry M. Joy before his decease that the said Etta L. Woodford should have one thousand dollars from his said estate to be paid to her at such time and manner then designated by him; and

"Whereas, the said Etta L. Woodford since the death of her father, and on or about the eleventh (11th) day of May, 1890, departed this life intestate, leaving her surviving her husband, Edwin E. Woodford, and the following named children fruit of her marriage with the said Woodford, the same being her only heirs at law, viz.: Jennie Maria Woodford, born February 10, 1879; Mabel Dennison Woodford, born May 26, 1881; Anna Louise Woodford, born April 21, 1883; Hermenia Joy Woodford, born November 30, 1884; and

"Whereas, the said Edwin E. Woodford is desirous that the money that was expected to be given to his wife as aforesaid should be invested for the sole benefit of his said children above named, and in the manner herein provided; and

"Whereas, the said Harry M. Joy is also willing that the said investment shall be made for the purpose and in the manner herein expressed; and

"Whereas, there is in the city of Niles, Mich., a house and lot known as lot one hundred and thirty-four (134) in H. B. Hoffman's addition to the village (now city) of Niles, which the said Edwin E. Woodford is desirous that the said Jennie M. Joy should invest said sum 'of one thousand dollars in the purchase thereof for the uses and purposes herein expressed, the purchase price thereof being the sum of twelve hundred dollars, and the said Woodford, in order that such investment may be made, is willing to give and pay towards said purchase the sum of two hundred dollars, with the distinct understanding and agreement that no one shall be liable to repay said sum to him or in any manner account therefor:

"Now, therefore, it is hereby expressly agreed by and between the said Jennie M. Joy, of the first part, Harry M. Joy of the second part, and Edwin E. Woodford for himself and as the natural guardian of his said children—they not having other guardian—as follows:

"*First.* The said Jennie M. Joy agrees that she will purchase the premises above described and pay therefor the sum of one thousand dollars and take the title thereto in her own name; that she will manage said property in all respects as she shall deem for the best interest of the children above named, being the children of the said Etta E. Woodford, deceased; that if, in her judgment, it is for their best interests, she will not sell the same, but in case she is of the opinion that it would be best for their interest to sell the same, then she will sell the same and invest and reinvest the proceeds thereof as she shall consider for their best interest; and that she will from time to time as in her judgment is necessary or advisable use of the income from said investment, if any there be, in such sum or sums as she shall consider necessary or advisable to be used for the benefit of said children or any or either of them, and if, in her opinion, it shall be necessary for the support or education of said children or any or either of them for her to use all or any part of the principal for that purpose, she is to be at liberty to use the same therefor; and that she will from time to time as they respectively arrive at the age of twenty-

one years, if in her opinion it is for the best interest of such child as well as for the best interest of all the others of said children, account for and deliver to such child so arriving at such age the undivided one-fourth part of the property and money belonging to such estate so held by her and then in her hands, less her reasonable costs, expenses, and charges, and less any sum that may have been advanced to or for the benefit of such child more than her one-fourth part thereof, and that in case she does not sooner account for and pay over the same she will upon the arrival at the age of twenty-one years of the youngest of said children account for and pay over to said children whatever sum shall then be in her hands, less her reasonable costs, expenses and charges in the proportion and manner last above stated. But it is understood and agreed that in case any of said children shall die intestate and without issue then the share which would go to such child if living shall be paid to the survivors.

"*Second.* The said Harry M. Joy consents to the foregoing investment and agrees that the sum so invested shall be considered as accounted for and properly disposed of by the said Jennie M. Joy as administratrix of the estate of his father, Henry M. Joy, deceased, and that he will not call upon her to account for the same to said estate of his father in any other manner.

"*Third.* The said Edwin E. Woodford requests such investment to be made as aforesaid, and for himself and as the natural guardian of his children aforesaid he agrees that he will not, and that his said children shall not, demand or ask from the estate of the said Henry M. Joy, deceased, nor from the said Jennie M. Joy, as administratrix or otherwise, any sum or sums whatever, and that the sum so invested as aforesaid shall be considered as a full and complete satisfaction of all claims that his late wife, Etta L. Woodford, may have had upon said estate of Henry M. Joy, deceased, and that he and his children aforesaid and the estate of the said Woodford, deceased, may have had or have thereto or thereon.

"*Fourth.* It is also agreed that the said Jennie M. Joy shall be required only to act honestly in her management of said property, and shall not be responsible

for any errors of judgment, and shall only be liable to account for such sums as actually come to her hands, and then only to act in good faith in relation thereto, and that in case of the death of the said Jennie M. Joy, or her ceasing to act under this agreement, the circuit court for the county of Kent, in chancery, shall have power to appoint a suitable person to carry out this agreement on her part.

"It is also agreed and fully understood that in case the estate of Henry M. Joy, deceased, or the administratrix thereof is called upon at any time to pay any sum whatever to the estate of the said Etta L. Woodford, deceased, or to any person claiming from, through, or under her, then that the amount which the said estate of Henry M. Joy, deceased, or the administratrix is found liable to pay shall be deducted from the sum hereby declared to be in the hands of the said Jennie M. Joy for the benefit of said children aforesaid.

"It is also agreed and fully understood that the second and third parties to this agreement have no interest in said fund, and that the aforesaid children do not take or have any interest whatever in said real estate, and that the same may be sold and the proceeds thereof invested and used as above expressed.

"In witness whereof the parties have hereunto set their hands and seals this ——— day of June, 1890.

"Jennie M. Joy          [L. S.]<br>
"Harry M. Joy          [L. S.]<br>
"Edwin E. Woodford [L. S.]"

This agreement had been prepared under Mrs. Joy's direction, and by her own attorney, Mr. Fitzgerald, a prominent lawyer of Grand Rapids. The $1,000 which she paid in the purchase of the lot was borrowed by her of Mr. Fitzgerald, and repaid to him out of her insurance money, at the expiration of a year, with interest at 7 per cent. Immediately after the purchase Woodford, with the children, moved into the house, and has ever since continued to reside there. He has never paid rent to any one, nor been asked to pay rent, so far as the record shows. But he has from time to

time made additions and improvements to the house, to the amount of $1,800, and has paid the taxes. The property is said to be now worth $3,000, the amount of the original purchase price and cost of improvements. The children continued to live there with him until they were married and went elsewhere. In the fall of the year 1914, the defendant Mrs. Joy, being in need of money, wrote to Woodford, and proposed to sell him the place for $2,000. In the letter she stated that she intended to keep $1,000 of the purchase price as reimbursement for the money she had put into the place, and to divide the other $1,000 among the children. Some correspondence followed between the two, in which Woodford conceded her right to receive back the $1,000, but he was unable to raise the money, and the transfer was not made. Upon being informed of defendant's efforts to sell the property the children filed this bill to enforce the trust, praying that defendant be required to convey the land to them, and offering to reimburse her for any expenses incurred or services rendered in the performance of the trust. Defendant answered denying the existence of any trust relation, and claiming to own the lot in her own right. And she also claimed for her answer the benefit of a cross-bill, and asked that complainants be decreed not to have any interest in the property or its proceeds, or, in the alternative, if a trust should be found, that she be repaid her $1,000, and interest thereon, out of the proceeds of the property. Upon hearing the proofs in open court the circuit judge was of the opinion that the agreement constituted a trust in favor of complainants whereby they became the equitable owners of the property; and he thereupon made a decree that the defendant execute to them a quitclaim deed thereof, and that they pay to her the expenses of the trust, fixed by the court at $82. The defendant appeals from this decree.

PERSON, J. (*after stating the facts*). In his brief counsel for defendant does not deny the trust, but says:

"The controlling question in the case is whether the defendant is entitled to be reimbursed for the $1,000 advanced by her for the purchase of the property which is the subject-matter of the trust, and without which advancement by the defendant it could not have been purchased."

And he urges as grounds for the reimbursement that the $1,000 paid for the trust property was to come from Mr. Joy's estate, and not from her own personal funds; that she simply advanced the amount temporarily, expecting that the property of the estate would be sufficient to reimburse her; but that the reimbursement was never made, because the assets of the estate proved worthless, whereby, he claims, she is now equitably entitled to repayment from the trust fund, with interest from the date of the loan.

This theory, however, is warranted neither by the terms of the agreement nor by the testimony at the hearing. It was, indeed, recited in the agreement that Mr. Joy wished his daughter to have $1,000 out of his estate. And the agreement was so drawn that the $1,000 furnished by defendant was to account, to that extent, for such property of his estate as she had in her hands. Yet by its terms, and in fact, the defendant furnished the money as an individual, and not as administratrix. The money which she paid for the land does not purport to be a temporary advancement, but a permanent investment, for the benefit of the children. That, together with the $200 furnished by Woodford, constituted the trust fund itself—the very fund which she agreed to hold for the benefit of the children, and to eventually pay over to them. There is nothing in the agreement indicating that the trust was to rest on any contingency, or that she expected any particular reimbursement from the estate. She

could not have expected complete reimbursement, because the agreement itself says that "the total assets belonging to said estate were of less value than the sum of fifteen hundred dollars and the liabilities against said estate were about five hundred dollars." She furnished the $1,000 absolutely, and retained whatever assets there were belonging to the estate not exceeding that amount. Neither did she claim in her testimony that she ever expected any reimbursement; nor that she furnished the money in reliance upon the assets of the estate. She does say that the bulk of the estate consisted of the Traverse City lands, and that these were worthless. But she does not say that she supposed them to be of value when she furnished the money, or that she discovered them to be worthless after the money was furnished. And the trust was created nearly four years after Mr. Joy's death. It was a kindly act on her part to use $1,000 from her husband's life insurance because of his request in favor of his child by a former marriage. The money was her own, and she was under no legal obligation to make that use of it. And it is unfortunate now, after having helped the children of that daughter, and after having used a large portion of what remained in educating her own son in the schools of this country and of Europe, that she should be left financially embarrassed in her old age. But it was an executed trust in the sense that its terms were clearly defined, and the courts have no alternative but to enforce it.

The decree will be affirmed, with costs of this court to complainants.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.